# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**JOHNNY EARL SCOTT JR.**  PLAINTIFF

v.  No: 4:17-cv-00695 PSH

**DOC HOLLADAY**  DEFENDANT

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Johnny Earl Scott Jr. filed a complaint pursuant to 42 U.S.C. § 1983 against former Pulaski County Sheriff Doc Holladay in his individual and official capacities. Doc. Nos. 1 & 5. Scott sues for money damages. Doc. No. 1 at 6. He claimed a lack of security at the jail in that one guard watches 150 inmates in two separate living quarters at times. Doc. Nos. 1 & 5. Scott also alleged that he did not receive a tuberculosis (TB) shot for ten days and that the toilet was occasionally plugged. *Id.* Scott's claims regarding TB and the stopped-up toilet were subsequently dismissed. Doc. No. 8. Scott's claim based on lack of security was allowed to proceed after Scott alleged he had been attacked because there were not enough guards on duty. *Id.*; *see also* Doc. No. 7.

Holladay filed a motion for summary judgment, a brief in support, and a statement of facts asserting that he is entitled to judgment as a matter of law on the merits of Scott's claim (Doc. Nos. 21-23). Although Scott was notified of his opportunity to file a response, he did not do so. *See* Doc. Nos. 24 & 29. Because Scott failed to controvert the facts set forth in Holladay's statement of facts, Doc. No. 22, those facts are deemed admitted. *See* Local Rule 56.1(c).

Holladay's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Holladay is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are

about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The following facts are taken from those submitted by Holladay that are supported by documents attached to his statement of facts (Doc. No. 22), including the Affidavit of Lesa Warner[1] (the "Warner Affidavit") and numerous exhibits (Doc. No. 22-1).

Scott was booked into the Pulaski County Regional Detention Facility ("PCRDF"), on July 20, 2017. Doc. No. 22-1 at 1 (Warner Affidavit, ¶ 1) and 5 (July 20, 2017 Book In Sheet).[2] Pulaski County policy provides that the PCRDF shall be operated in a constitutional manner in compliance with the Minimal Jail Standards of Arkansas and shall provide a safe living environment for inmates. *Id.* at 2 (Warner Affidavit, ¶ 6) and 8-10 (Pulaski County Sheriff's Office Branch Directive D01-0001).

The PCRDF is operated utilizing the concepts of the direct supervision method of inmate management.[3] Each unit of the PCRDF is supervised by a unit deputy. Each unit deputy is required and expected to operate each unit in a constitutional, safe, and secure manner within the guidelines set forth in the United States Constitution, all applicable laws, the PCSO uniform standards of conduct and the branch directives of the PCRDF. *Id.*

---

[1] Warner is the Administrative Sergeant at the PCRDF.

[2] On November 6, 2017, Scott pleaded guilty to two counts of theft by receiving, and was sentenced to five years in the Arkansas Department of Correction. *Id.* at 2-3 (Warner Affidavit ¶ 13), 37 (60CR-17-3314 Plea Statement), and 38 (60CR-17-3314 Sentencing Order).

[3] "Direct supervision combines two key elements – the physical design of a jail and an inmate management strategy – to significantly reduce the problem inmate behavior commonly seen in jails. Direct supervision jails focus on actively managing inmate behavior to produce a jail that is safe and secure for inmates, staff, and visitors." See Strategic Inmate Management (SIM), National Institute of Corrections, https://nicic.gov.

The units in issue here are units P and Q. The P and Q units each house 79 inmates, with 39 double occupancy cells and one single occupancy cell. *Id.* at 2 (Warner Affidavit, ¶ 9). The P and Q units are connected by a link door, which can be opened to allow access directly from one unit to the other. *Id.* at 2 (Warner Affidavit, ¶ 8).

Unit deputies are allowed one 30-minute break per shift. In units with a connecting link door, such as the P and Q units, when one deputy goes on break all inmates in both units are confined to their cells, the link door is opened, and one deputy supervises both units until the other deputy returns. *Id.* at 2 (Warner Affidavit, ¶ 10). In some circumstances, one unit deputy supervises two linked units for an entire shift. *Id.* at 2 (Warner Affidavit, ¶ 11).

Scott filed a grievance on October 17, 2017. In it, he complained that, despite the PCRDF handbook requiring one guard per 80 inmates, on some occasions the link door between two units is opened, and one guard is responsible for more than 80 inmates. *Id.* at 2 (Warner Affidavit, ¶ 12) and 36 (October 17, 2017 PCRDF Grievance). A response is stamped on the grievance, and states "This is a non-grievable issue. Please consult the inmate handbook." *Id.* at 36.

The attack in issue took place on January 7, 2018. On that date, Scott was assigned to Cell 307 in the P unit. Ricky Davey was Scott's cellmate. *Id.* at 3 (Warner Affidavit, ¶ 15) and 42 (Deputy Charles Smith's January 7, 2018, PCRDF Incident Report (the "Smith Report")). Davey was not on Scott's "keep separate" list at that time. *Id.* at 2 (Warner Affidavit ¶ 16) and 43 (Scott's Miscellaneous Booking Report). During A-shift on January 7, 2018, Deputy Charles Smith was assigned to supervise the P unit, and Deputy Martin Palacios was assigned to supervise the Q unit. *Id.* at 3 (Warner Affidavit, ¶ 14) and 39 (January 7, 2018 PCRDF Manpower Assignment Form). Smith took his break during that shift, returning to the P unit at 12:03 p.m. *Id.* at 3 (Warner Affidavit, ¶ 15) and 42 (Smith Report).

4

Smith's report about the attack in issue states, "[a]t 1203 I (Deputy C. Smith) came back from break, after getting the link door closed I made my expectations for this afternoon and told the inmates that Bible Study was here and notified the inmate for Sick Call for Nurse Stowe. I started unlocking doors for Activity Time and an inmate yelled out fight in 307." *Id.* at 42. Smith's announcements were made to the unit over the loudspeaker. Doc. No. 22 at 3.

When Smith heard an inmate yell that there was a fight in cell 307, he went to cell 307 and pulled Scott out of the cell, guided him to a chair in the activity room, and closed Davey in the cell. Doc. No. 22-1 at 42. Scott reported to Smith that Davey struck him in the face and head. Davey denied the accusation. *Id.* Smith called for any sergeant to report to P unit. Sergeant Luckadue reported to the unit and placed Scott in the unit's multi-purpose room where he was examined by medical personnel. Smith gathered Scott's belongings and removed him from the unit. *Id*. Davey was subsequently placed on Scott's keep "separate list." *See Id.* at 3 (Warner Affidavit, ¶ 17) and 43 (Scott's Miscellaneous Booking Report).

A Neurological Status Assessment form prepared by Nurse Stowe indicates that Scott suffered a petechial hemorrhage to his left eye. He was advised to place ice packs on the left eye for 24 hours. *Id.* at 3 (Warner Affidavit ¶ 18) and 44 (Turn Key Health January 7, 2018, Neurological Status Assessment form). He was oriented x2, and could not recall the date or day of the week. His pupils were reactive, speech was coherent, hand grasp was strong, and gait was normal. *Id.* There is no evidence of additional medical treatment.

### IV. Analysis

An inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). A correctional officer is liable for failing to protect an inmate if the inmate can prove that the officer was deliberately indifferent to a substantial risk of serious harm to the inmate. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). The Eighth

Circuit Court of Appeals has repeatedly recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1151; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

The undisputed facts establish that Scott was attacked by his cellmate with no warning; that two guards, neither of whom are named as defendants in this suit, were on duty when alerted to the attack; that those guards were not aware of any threat Davey posed to Scott; that Smith responded as soon as he was alerted to the attack; and that Scott received medical attention promptly.

There is no evidence that Sheriff Holladay was personally aware of any threat Davey posed to Scott and failed to take corrective action. There is no evidence that Sheriff Holladay had any responsibility for monitoring the P unit at the time of the attack. Presumably, therefore, Scott is suing Holladay in his role as administrator of the PCRDF. Holladay's role as a supervisor cannot be the basis for individual liability. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). For these reasons, Holladay is entitled to qualified immunity[4] with respect to Scott's individual capacity claims.

---

[4] Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Scott's official capacity claims[5] also fail. These claims are premised on the argument that PCRDF's official municipal policy which allows two units to be supervised by one guard periodically is unconstitutional, resulted in a lack of adequate supervision, and ultimately resulted in the attack on and injuries to Scott. The undisputed facts fail to establish that Scott's injuries resulted from the PCRDF's policy. In fact, they establish that both guards were on duty and in place when the attack took place. Smith's report does indicate that he had been on break. While on break, the cell doors in both units would have been locked and the link door open. When Smith returned from break, he closed the link door, announced expectations for the afternoon, announced that Bible Study was to take place in the unit, notified inmates about sick call, and started unlocking cell doors for activity time. The attack occurred while or after Smith performed these tasks. The undisputed evidence establishes that both guards were on duty when the attack occurred. Thus, the policy allowing one guard to supervise two units while the second guard is on break could not have resulted in Scott's injuries. Accordingly, there can be no municipal liability based on the PCRDF's practice of having one deputy guard two units at times.

## V. Conclusion

Because the undisputed facts show that no constitutional violation occurred, both Scott's individual capacity and official capacity claims fail as a matter of law.[6] Accordingly, Holladay's

---

[5] Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). A municipality can only incur section 1983 liability for a constitutional violation if the violation resulted from (1) an "official municipal policy," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 69 (1978); (2) an unofficial "custom," *id.*; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

[6] *See McCoy v. City of Monticello*, 411 F.3d 920, 922–23 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

motion for summary judgment (Doc. No. 21) is granted, and Scott's claims against Holladay are dismissed with prejudice.

DATED this 9th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE